In re Stephanie A. CALDERON, Debtor.

Stephanie A. Calderon f/k/a Stephanie A. Pollard

v.

Bank of America Corporation and Bank of America, N.A.

Bankruptcy No. 4:11–BK–12628. Adversary No. 4:12–AP–01005.

United States Bankruptcy Court, E.D. Arkansas, Little Rock Division.

July 1, 2013.

Robert R. Danecki, Attorney at Law, Little Rock, AR, for Debtor and Stephanie A. Calderon f/k/a Stephanie A. Pollard.

Judy Simmons Henry, Wright, Lindsey & Jennings, Little Rock, AR, for Bank of America Corporation and Bank of America, N.A.

### ORDER DENYING JURY DEMAND

AUDREY R. EVANS, Bankruptcy Judge.

Now before the Court is a *Demand for Trial by Jury* filed by the Defendant, Bank of America, N.A. ("BANA"). (Dkt. No. 59). The Plaintiff, Stephanie A. Calderon, filed a voluntary Chapter 13 bankruptcy petition on April 21, 2011. She then filed an adversary complaint against various entities, alleging that they had willfully violated the automatic stay. The Plaintiff amended her complaint on January 23, 2013, to name BANA as a defendant. She seeks actual damages, punitive damages, and attorney's fees under 11 U.S.C. § 362(k)(1).[1]

On April 4, 2013, the Defendant moved to withdraw the reference to the District Court. The Defendant maintained that because it requested a jury trial and did not consent to the Bankruptcy Court conducting one pursuant to 28 U.S.C. § 157(e), mandatory withdrawal of the reference was required under subsection 157(d). On May 2, 2013, the District Court entered an order, concluding that withdrawal of the reference was discretionary and declining to withdraw the reference until the Bankruptcy Court determined whether the Defendant was entitled to a jury trial. *Stephanie A. Calderon v. Bank of Am. Corp.*, No. 4:13MC00005 KGB (E.D.Ark. May 2, 2012).

Because bankruptcy courts are Article I courts (or legislative courts) under the United States Constitution, Congress may proscribe the cases and circumstances in which a bankruptcy judge may conduct a jury trial.[2] In § 157(e) of the Judicial Code, Congress provides that:

> If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.

28 U.S.C. § 157(e); *see also* Fed. R. Bankr.P. 9015(b). The District Court for the Eastern District of Arkansas has authorized the Bankruptcy Court to conduct jury trials. *See* E.D. Ark., Gen. Order No. 44 (effect. Nov. 13, 1995); *see also* Loc. Bankr.R. 9015–1. However, the Defendant has not consented to having the

---

1. Section 362(k)(1) provides that "... an individual injured by any willful violation of a stay ... shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

2. Article I judges lack the constitutional guarantees of life tenure and protection against salary diminution enjoyed by Article III judges under the "good Behaviour" and "Compensation" clauses of the Constitution. *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 59–61, 102 S.Ct. 2858, 2865–66, 73 L.Ed.2d 598 (1982); *see* U.S. Const. Art. III, § 1.

Bankruptcy Court conduct a jury trial. Therefore, if the Defendant were entitled to a jury trial, it would be held in the District Court. For the reasons discussed below, the Defendant's jury trial demand is denied.

## ANALYSIS

The Defendant argues that it is entitled to a jury trial on the Plaintiff's § 362(k)(1) action under the Seventh Amendment of the United States Constitution. In its *Brief in Support of its Motion to Withdraw the Reference of the Adversary Proceeding,* the Defendant contends that it is constitutionally guaranteed a right to jury trial because the Plaintiff's action is a legal action, the action does not assert a "public right," and the Defendant has not filed a proof of claim in the Plaintiff's bankruptcy case. (Dkt. No. 71). The Plaintiff maintains that a § 362(k)(1) action is an equitable action or, alternatively, that her action asserts a "public right" which does not entitle the Defendant to a jury trial.

■ The right to a jury trial is preserved by the Seventh Amendment to the Constitution of the United States. The Seventh Amendment provides "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. . . ." U.S. Const. amend. VII. "The Seventh Amendment protects a litigant's right to a jury trial only if a cause of action is legal in nature and involves a matter of 'private right.'" *Granfinanciera v. Nordberg,* 492 U.S. 33, 42 n. 4, 109 S.Ct. 2782, 2790 n. 4, 106 L.Ed.2d 26 (1989). In *Granfinanciera,* the Supreme Court set forth the following analysis to determine whether a party has the right to a jury trial under the Seventh Amendment:

First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature. The second stage of this analysis is more important than the first.

492 U.S. at 42, 109 S.Ct. at 2790 (internal quotations and citations omitted). "If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment" the court must then determine if the claim asserts a "public" as opposed to a "private" right. 492 U.S. at 42, 109 S.Ct. at 2790, n. 4. Under the public rights analysis, a court "must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder." 492. U.S. at 42, 109 S.Ct. at 2790. Accordingly, after analyzing whether an action is one at common law (*i.e.,* whether it is based on 18th Century English law and is legal as opposed to equitable in nature), the Court must then determine whether the action asserts a private or a public right.

### There Was No Cause of Action For a Violation of an Automatic Bankruptcy Stay in 18th Century England

The Defendant has cited no case law or other evidence to support the contention that there was anything resembling an automatic stay—let alone an action for its violation—in eighteenth century England. This is not surprising. At least one court has determined that a § 362(k)(1) action lacks a historical analogue in English common law. *Gecker v. Gierczyk (In re Glenn),* 359 B.R. 200, 203 (Bankr.N.D.Ill. 2006), *appeal denied,* No. ADV. 04A4493, 2006 WL 2252529 (N.D.Ill. Aug. 3, 2006). Moreover, a review of the history of bankruptcy law in the United States indicates that the concept of an automatic stay and an action for its violation are relatively new. The automatic stay only came into

statutory fruition as part of the enactment of the Bankruptcy Code in 1978. *In re Benalcazar*, 283 B.R. 514, 520 (Bankr. N.D.Ill.2002). Under the prior Bankruptcy Acts, judges had to issue injunctions to protect property from leaving what today would be called the bankruptcy estate. *See id.* (discussing history of the automatic stay). The Bankruptcy Code eliminated this cumbersome procedure in § 362(a) which stays an array of collection activities when a bankruptcy petition is filed. Section 362(k)(1), formerly § 362(h),[3] is only 29 years old. Enacted by Congress as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984,[4] "section 362(k)(1) creates a cause of action that was [simply] unknown to the common law . . . ." *In re Glenn*, 359 B.R. at 202; *see also In re Valley Steel Prods. Co., Inc.*, 147 B.R. 189, 192 (Bankr.E.D.Mo.1992) ("Unlike the fraudulent conveyance actions in *Granfinanciera*, a breach of the automatic stay does not resemble a state-law or common law claim.").

### *A Stay Violation Action Might Seek Legal Relief*

The Defendant's argument that it is constitutionally entitled to a jury trial is largely based on the second prong of the *Granfinanciera* analysis. Specifically, the Defendant contends that because the Plaintiff seeks actual and punitive damages (*i.e.*, money damages), the Plaintiff's action seeks "legal" rather than "equitable" relief.

"Generally, an action for money damages was 'the traditional form of relief offered in the courts of law.'" *Chauffeurs, Teamsters & Helpers, Local No. 391 v.*

*Terry*, 494 U.S. 558, 570, 110 S.Ct. 1339, 1347, 108 L.Ed.2d 519 (1990) (quoting *Curtis v. Loether*, 415 U.S. 189, 196, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974)). Additionally, "[r]emedies intended to punish culpable individuals, as opposed to those intended simply to extract compensation or restore the status quo, were issued by courts of law, not courts of equity." *Tull v. United States*, 481 U.S. 412, 422, 107 S.Ct. 1831, 1838, 95 L.Ed.2d 365 (1987). Thus, for example, the Supreme Court held in *Curtis v. Loether*, that actual and punitive damages sought for a statutory violation of the Civil Rights Act of 1968, was a request for legal rather than equitable relief. 415 U.S. 189, 196, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974).

However, the Supreme Court has never "go[ne][so] far as to say that any award of monetary relief must necessarily be 'legal' relief." *Curtis*, 415 U.S. at 196, 94 S.Ct. at 1009. "First, a monetary award may be an equitable remedy if the award is 'restitutionary' in nature, 'such as in actions for disgorgement of improper profits.'" *Hopkins v. Saunders*, 199 F.3d 968, 977 (8th Cir.1999) (quoting *Terry*, 494 U.S. at 570, 110 S.Ct. at 1348); *see also Great–W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 229–30, 122 S.Ct. 708, 723, 151 L.Ed.2d 635 (2002) (Ginsburg, J., dissenting) (collecting cases). "Second, a monetary award may be deemed an equitable remedy if the award is 'incidental to or intertwined with injunctive relief.'" *Hopkins*, 199 F.3d at 977 (quoting *Terry*, 494 U.S. at 571, 110 S.Ct. at 1348). The Plaintiff clearly seeks monetary relief which renders her action legal in nature

---

3. As part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("**BAPCPA**"), Congress renumbered § 362(h) as § 362(k)(1). BAPCPA, Pub.L. No. 109–8, §§ 305(1)(B), 441, 119 Stat. 23, 79, 114 (2005).

4. Bankruptcy Amendments of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984) (codifying 11 U.S.C. § 362(h)).

unless one of the two exceptions delineated by the Supreme Court applies.

■■■ Neither the actual damages nor the punitive damages sought by the Plaintiff can be properly characterized as restitutionary. A restitutionary award returns a defendant's wrongful gains to the plaintiff. *See Great–W. Life*, 534 U.S. at 230, 122 S.Ct. 708 (Ginsburg, J., dissenting); *see also Bentley v. Arlee Home Fashions, Inc.*, 861 F.Supp. 65, 68 (E.D.Ark.1994) ("The main purpose of a damages award is some type of compensation for Plaintiff's loss—contrasted with restitution where the purpose is to deprive the defendant of his unjust gain."). Here, the Plaintiff's claimed actual damages are legal fees and medical expenses associated with the Defendant's alleged postpetition collection activities. These alleged damages are losses rather than wrongful gains obtained by the Defendant. Moreover, punitive damages are not restitutionary because they are designed to punish a defendant for its offense and to deter future conduct. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416, 123 S.Ct. 1513, 1519, 155 L.Ed.2d 585 (2003).

The second exception that the Supreme Court outlined in *Terry* might apply if the Plaintiff's requested relief can be characterized as "incidental to or intertwined with injunctive relief." The automatic stay has been characterized as a statutory injunction. *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 878 (7th Cir.2001); *see also Carver v. Carver*, 954 F.2d 1573, 1578 (11th Cir.1992) ("[T]he automatic stay is essentially a court-ordered injunction. . . ."); *Lange v. Schropp (In re Brook Valley VII, Joint Venture)*, 496 F.3d 892, 899 (8th Cir.2007) ("When a bankruptcy court lifts the automatic stay, it merely removes an injunction barring creditors from bringing suit against the debtor."). Because a § 362(k)(1) action is a means of enforcing an injunction and vindicating the authority of the Bankruptcy Code, a stay violation action is arguably "intertwined" with injunctive relief. *See In re Hookup, L.L.C.*, No. 12–33202–KRH, 2012 WL 4904538, *4 (Bankr.E.D.Va. Oct. 15, 2012) (Section 362(k)(1) action is an "equitable proceeding . . . to enforce the Bankruptcy Code's statutory injunction that protects and preserves the bankruptcy estate" which does not give rise to a Seventh Amendment right of trial by jury).[5] However, the *Terry* exception appears to be quite narrow, see generally *Golden v. Kelsey–Hayes Co.*, 73 F.3d 648, 660–63 (6th Cir.1996) (fleshing out the exception), and might not apply to § 362(k)(1) actions.[6] In

---

5. Several decisions have described a § 362(k)(1) action as an "equitable" proceeding that does not give rise to a Seventh Amendment right of trial by jury. *See, e.g., Quarles v. Wells Fargo Home Mortg., Inc. (In re Quarles)*, 294 B.R. 729, 731 (Bankr. E.D.Ark.2003); *Clayton v. King (In re Clayton)*, 235 B.R. 801, 804 (Bankr.M.D.N.C. 1998); *Crispell v. Landmark Bank (In re Crispell)*, 73 B.R. 375, 378 (Bankr.E.D.Mo.1987); *see also Periera v. Chapman*, 92 B.R. 903, 908 (C.D.Cal.1988) ("[A] plaintiff has no right to a jury trial in a section 362([k]) action."); *Jobin v. Youth Benefits Unlimited, Inc. (In re M & L Bus. Mach. Co.)*, 59 F.3d 1078, 1082 (10th Cir.1995) ("[E]nforcement of Section 549, a provision clearly designed to protect the bankruptcy estate following its inception, is a procedure which is equitable in nature."). These decisions implicitly recognize that bankruptcy courts "are essentially courts of equity, and their proceedings inherently proceedings in equity." *United States v. Duggan*, 210 F.2d 926, 933 (8th Cir.1954) *(quoting Pepper v. Litton*, 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 240, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934))).

6. At least two decisions hold that § 362(k)(1) actions are legal in nature. *See Miranda v. Gonzalez (In re Gonzalez)*, No. 02–05485 BKT, 2010 WL 3395677, *2 (Bankr.D.P.R. Aug. 23, 2010); *In re Glenn*, 359 B.R. at 203. The court in *In re Gonzalez* simply concludes that

any event, the Court need not need reach the issue of whether the *Terry* exception applies, because the Court concludes that a stay violation action asserts a "public right," as discussed below.

### A Stay Violation Action Asserts a "Public Right"

■ Under the public rights analysis, the Court must initially determine whether Congress "has assigned" adjudication of § 362(k)(1) actions to the bankruptcy court. *Granfinanciera*, 492 U.S. at 42, 109 S.Ct. at 2790. If so, the Court must then decide whether Congress may make such an assignment. *Id.* The validity of the Congressional assignment turns on whether a § 362(k)(1) action asserts a "public right."

■ By statute, it appears that Congress has implicitly assigned adjudication of § 362(k)(1) actions to the bankruptcy court. Section 157(b)(1) of the Judicial Code provides that a bankruptcy court may enter final orders and judgments in core proceedings. Subsection (b)(2)(G) says that "[c]ore proceedings include, but are not limited to—motions to terminate, annul, or modify the automatic stay." Stay violation actions are not listed, but the omission is insignificant. *In re Glenn*, 359 B.R. at 203. The prefatory language "not limited to" indicates that subsection (b)(2)(G) does not purport to list the exclusive core proceedings involving the automatic stay. "A proceeding under section 362([k]) is a proceeding 'arising under title 11' and is a core proceeding" under § 157 of the Judicial Code. *Williams v. Gruber (In re Williams)*, 196 B.R. 120, 121 (Bankr.E.D.Ark.1996); *see also MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108–09 (2d Cir.2006) ("Claims that clearly invoke substantive rights created by federal

bankruptcy law necessarily arise under Title 11 and are deemed core proceedings."); 3 COLLIER ON BANKRUPTCY ¶ 362.11[3] at 362126126.1 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2005) ("[A]n action seeking a remedy under section 362(k) is a core proceeding that may be decided by the bankruptcy court.").

The Supreme Court has cautioned that the mere designation of a claim as "core" cannot strip a defendant of the right to a jury trial. In *Granfinanciera*, the Court held that although the recovery of fraudulent transfers was listed as a core proceeding under § 157(b)(2)(H) of the Judicial Code, a defendant that had not filed a proof of claim was still guaranteed a jury trial when sued by the trustee. 492 U.S. at 36, 109 S.Ct. at 2787. However, as noted in *In re Glenn:*

> Congressional treatment of violations of the automatic stay appears to differ from its treatment of fraudulent conveyances in at least one significant way: jurisdiction over fraudulent conveyance actions is granted concurrently to the District Court and the state courts, but jurisdiction over stay violations is granted exclusively to the District Court.

359 B.R. at 203 (Bankr.N.D.Ill.2006) (citing *Halas v. Platek*, 239 B.R. 784, 792 (N.D.Ill. 1999)); *see also E. Equip. & Servs. Corp. v. Factory Point Nat'l Bank*, 236 F.3d 117, 120–21 (2d Cir.2001) (holding state court tort actions to enforce the automatic stay were preempted by the comprehensive provisions of the Code); *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 913–16 (9th Cir.1996); *Startec Global Commc'ns Corp. v. Videsh Sanchar Nigam Ltd. (In re Startec Global Commc'ns Corp.)*, 292 B.R. 246, 254 (Bankr.D.Md.

the *Terry* exception is inapplicable and the court in *In re Glenn* does not address the

exception.

2003), *aff'd,* 300 B.R. 244 (D.Md.2003). Therefore, the Court concludes that Congress has assigned adjudication of § 362(k)(1) actions to the bankruptcy court.

The last question—whether Congress *may assign* adjudication of § 362(k)(1) actions to the bankruptcy court—requires a determination of whether an action for a violation of the automatic stay asserts a "public right." A public right may be asserted in two types of cases: (a) cases where the Federal Government is a party, and (b) cases between private parties. *Granfinanciera,* 492 U.S. at 54, 109 S.Ct. at 2797. In *Granfinanciera,* the Court stated that in cases between private parties, a statutory cause of action asserts a "public right" where:

> Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, has created a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary.

492 U.S. at 54, 109 S.Ct. at 2797 (quotations omitted). More recently, in *Stern v. Marshall,* the Court noted that "public rights" disputes between private parties are limited:

> ... to cases in which the claim at issue derives from a federal regulatory scheme, or in which resolution of the claim by an expert Government agency is deemed essential to a limited regulatory objective within the agency's authority. In other words, it is still the case that what makes a right 'public' rather than private is that the right is integrally related to particular Federal Government action.

— U.S. ——, 131 S.Ct. 2594, 2613, 180 L.Ed.2d 475 (2011), *reh'g denied,* — U.S. ——, 132 S.Ct. 56, 180 L.Ed.2d 924 (2011); *see id.* at 2618 ("[T]he question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.").

Applying the Supreme Court's varied public rights formulations, the Court joins those courts which have held that the rights created and vindicated by § 362(k)(1) "are so fundamental to our bankruptcy system ... that they should, therefore, be viewed as 'public rights' ...." *Miranda v. Gonzalez (In re Gonzalez),* No. 02–05485 BKT, 2010 WL 3395677, *3 (Bankr.D.P.R. Aug. 23, 2010) (quoting *In re Glenn,* 359 B.R. at 204); *see also Turner v. First Cmty. Credit Union (In re Turner),* 462 B.R. 214, 221 (Bankr. S.D.Tex.2011); *In re Valley Steel,* 147 B.R. at 192 (section 362(k)(1) actions involve public rights because "the application of the automatic stay to creditors is essential to the functioning of the bankruptcy process"); *Gordon v. Friedman's Inc. (In re Gordon),* 209 B.R. 414, 417 (Bankr. N.D.Miss.1997) (section 362(k)(1) actions "fit within the expanded definition of public rights as set forth in the *Granfinanciera* decision"). As stated by the Seventh Circuit:

> Section 362 is the central provision of the Bankruptcy Code. When a debtor files for bankruptcy, section 362 prevents creditors from taking further action against him except through the bankruptcy court. The stay protects debtors from harassment and also ensures that the debtor's assets can be distributed in an orderly fashion, thus preserving the interests of the creditors as a group.

*Price v. Rochford,* 947 F.2d 829, 831 (7th Cir.1991) (citing S.Rep. No. 95–989, 95th Cong., 2d Sess. 5455 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840–41). Consequently, § 362(k)(1)'s purpose "is not to redress tort violations but [rather] to pro-

tect the rights conferred by the automatic stay." *Aiello*, 239 F.3d at 880. A § 362(k)(1) action is created by the bankruptcy code to ensure that those who violate the stay are held accountable so that the debtor and its creditors are protected by the bankruptcy system. Stay violation actions are simply unlike the fraudulent transfer actions in *Granfinanciera* that the Supreme Court deemed "quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate." 492 U.S. at 34–35, 109 S.Ct. at 2786. The Court finds that a § 362(k)(1) action asserts a "public right."

### The Absence of a Filed Proof of Claim Does Not Alter the Court's Analysis

■ Having concluded that the Defendant is not entitled to a jury trial because a § 362(k)(1) action asserts a "public right," the Court now addresses the Defendant's argument that it is entitled to a jury trial under *Granfinanciera* and *Langenkamp v. Culp* solely because it has not filed a proof of claim. Generally, a creditor who files a claim against the estate "triggers the process of 'allowance and disallowance of claims,' thereby subjecting

himself to the bankruptcy court's equitable power" and is not entitled to a jury trial. *Langenkamp v. Culp*, 498 U.S. 42, 44, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (quoting *Granfinanciera*, 492 U.S. at 58–59 & n. 14, 109 S.Ct. at 2799–2800 & n. 14). In *Granfinanciera*, the absence of filed proof of claims by the defendants was relevant to the Supreme Court's jury trial analysis because the fraudulent transfer actions brought by the trustee did not involve the adjudication of public rights. Consistent with *Granfinanciera*, the Supreme Court in *Langenkamp* held that defendants sued by the trustee for allegedly receiving preferential transfers were not entitled to a jury trial because they had filed proofs of claim. 498 U.S. at 45, 111 S.Ct. at 331. In *dicta*, the Court noted that a defendant in a preference action who does not file a proof of claim would be entitled to a jury trial. *Id.* The Court said that a preference "amounts to a legal action to recover a monetary transfer." *Id.* Notably, the Court did not address whether a preference action asserted a public right, under the third prong of the *Granfinanciera* analysis.[7] A public rights analysis was unnecessary because the Defendant had consented to the bankruptcy court's equitable jurisdiction by filing a proof of claim.[8]

---

7. Post-*Langenkamp*, the courts are split over whether a preference action asserts a public right. *Compare Samson v. Blixseth (In re Blixseth)*, No. 09–60452–7, 2011 WL 3274042, *11 (Bankr.D.Mont. Aug. 1, 2011) (preference action asserts a public right), *order amended on denial of reconsideration*, 463 B.R. 896 (Bankr.D.Mont.2012); *In re Apex Long Term Acute Care—Katy, L.P.*, 465 B.R. 452, 468 (Bankr.S.D.Tex.2011) (same); *Post Confirmation Comm. v. Tomball Forest, Ltd. (In re Bison Bldg. Holdings, Inc.)*, 473 B.R. 168, 171 (Bankr.S.D.Tex.2012) (same), *with In re Arbco Capital Mgmt., LLP*, 479 B.R. 254, 264–65 (S.D.N.Y.2012) (preference action does not assert a public right); *Tabor v. Kelly (In re Davis)*, No. 05–15794–GWE, 2011 WL 5429095, *12 (Bankr.W.D.Tenn. Oct. 5, 2011)

(same). *See also* G. Ray Warner, *Rotten to the "Core": An Essay on Juries, Jurisdiction and Granfinanciera*, 59 UMKC L.REV. 991, 1021 (1991) (concluding that if the Seventh Amendment right to jury trial analysis and the power to delegate matters to non-article III tribunals analysis are the same, then *Langenkamp* "necessarily means that [a] preference action involves a public right.").

8. The Defendant misreads *In re Glenn* for the proposition that a public rights analysis was applied to the plaintiff's § 362(k)(1) action because the defendant had filed a proof of claim. To the contrary, the opinion does not address whether the defendant filed a proof of claim. There is one case, not cited by the Defendant, which arguably embraces the De-

Here, the fact that the Defendant has not filed a proof of claim is irrelevant because the Court has determined that a § 362(k)(1) action asserts a public right and the Defendant is therefore, not entitled to a jury trial.

■ Finally, the Court notes that the allegations are that the Defendant *willfully violated* the automatic stay which implies that the Defendant had knowledge of the bankruptcy, and nevertheless, intentionally tried to collect a debt from the Plaintiff–Debtor. *Knaus v. Concordia Lumber Co. (In re Knaus)*, 889 F.2d 773, 775 (8th Cir.1989) ("A willful violation of the automatic stay occurs when the creditor acts deliberately with knowledge of the bankruptcy petition.").[9] This is not a case, for example, where a defendant was sued for common law breach of contract and pulled into bankruptcy court to defend against an action which should have been brought in state court. *See N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 91, 102 S.Ct. 2858, 2882, 73 L.Ed.2d 598 (1982) (debtor sued defendant in bankruptcy for breach of prepetition contract and litigated suit over defendant's objection). This is a case about an action for a violation of the automatic stay, an action created by the bankruptcy code and rightfully heard in bankruptcy court. The Defendant argues that because it did not file a proof of claim, it has a right to a jury trial. The Defendant's argument fails. A Defendant's failure to file proof of claim does not *ipso facto* create a right to a jury trial.

## CONCLUSION

In summary, the Court finds that the Defendant is not entitled to a trial by jury under the Seventh Amendment. Applying the Seventh Amendment jury trial analysis set forth in *Granfinanciera*, the Court concludes that a § 362(k)(1) action does not have a historical analogue in eighteenth century England. Under the second prong of the *Granfinanciera* analysis, a § 362(k)(1) action may seek legal as opposed to equitable relief, but the Court need not resolve this close question because the Court concludes that a stay violation action under § 362(k)(1) asserts a public right. A § 362(k)(1) action is so fundamental to the enforcement of the automatic stay—one of the central protections provided by the Bankruptcy Code—

---

fendant's view. *See Alvarado v. Wash. Mut. Bank (In re Alvarado)*, No. 02–56000–LMC, 2008 WL 783545, *3 (Bankr.W.D.Tex. Mar. 19, 2008) (defendant submitted to equitable jurisdiction of bankruptcy court by filing proof of claim and waived Seventh Amendment right to trial by jury in § 362(k)(1) action). However, in *In re Alvarado*, the court did not apply a public rights analysis presumably because the defendant's filing of a proof of claim rendered such an analysis unnecessary.

9. At least one court has denied a defendant a Seventh Amendment right to trial by jury on the grounds that a § 362(k)(1) action is essentially a civil contempt proceeding where the Supreme Court has held that the right to trial by jury does not apply. *In re Harrison*, 185 B.R. 607, 610 (Bankr.D.Kan.1995); *see also Gibbons v. Haddad (In re Haddad)*, 68 B.R.

944, 952 (Bankr.D.Mass.1987) ("The exercise of civil contempt powers is consistent with, and indeed virtually indistinguishable from, exercise of the power given the court by 11 U.S.C. § 362([k]) to enter judgment for both compensatory and punitive damages as the result of a willful violation of the automatic stay."); *U.S. v. Harchar*, 331 B.R. 720, 730 (N.D.Ohio 2005) ("[T]here can be little doubt that when § 362(h) was enacted in 1984, Congress was concerned ... with providing explicit statutory authorization for the 'only previously available remedy for a stay violation: Contempt.'" (quoting *In re Bivens*, 324 B.R. 39, 42 (Bankr.N.D.Ohio 2004))). Because the Court finds that a stay violation action asserts a public right, the Court need not address the basis in *In re Harrison* for denying a right to trial by jury.

that such an action can only be described as vindicating public rights. Lastly, a defendant's failure to file a proof of claim cannot create a Seventh Amendment right to trial by jury when, as is the case here, the Court finds that the Plaintiff's action asserts a public right.

Accordingly, it is hereby

**ORDERED** that the Defendant's Jury Demand is **DENIED.**

**IT IS SO ORDERED.**